IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RUSSELL ALLEN BLACK,

      **Plaintiff,**

v.                              **Case No. 3:19-cv-00561**

STATE OF WEST VIRGINIA;
PAUL T. FARRELL;
GREGORY L. HOWARD; and
CRAIG R. TATTERSON,

      **Defendants.**

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

On July 31, 2019, Plaintiff Russell Allen Black, proceeding *pro se*, and then incarcerated at the Western Regional Jail and Correctional Facility in Barboursville, West Virginia, filed a complaint against the defendants under 42 U.S.C. § 1983. (ECF No. 2). Currently pending are an initial screening of the Complaint pursuant to 28 U.S.C. § 1915 and a Motion for a Speedy Trial. (ECF Nos. 2, 5). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed the allegations of the Complaint, the undersigned **FINDS** that all four defendants are immune from liability. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge accept the proposed findings; **DISMISS** the complaint, (ECF No. 2), with

prejudice; and **REMOVE** this matter from the docket of the Court. In light of the recommendation for dismissal, the undersigned further **RECOMMENDS** that Plaintiff's Motion for a Speedy Trial be **DENIED**. (ECF No. 5).

## I.    Relevant Background

Plaintiff complains about a prior state criminal proceeding against him, which has Case No. 14-F-47 and remains pending in the Circuit Court of Cabell County, West Virginia on matters related to supervised release. (ECF No. 2 at 2). Plaintiff alleges that he was arrested on May 15, 2013 and was incarcerated for two and one half years without a trial. (*Id.* at 4). Plaintiff claims that, because of this delay, his right to a speedy trial was violated. He asks this Court to "dismiss the charges and supervised release," and order compensation in the amount of ten million dollars for his loss of property, damage to his reputation, and emotional and mental stress. (*Id.* at 5). In support of his claims, Plaintiff provides assorted paperwork from Case No. 14-F-47, including two Orders issued by Paul T. Farrell, Judge, Circuit Court of Cabell County, and letters and motions prepared by Plaintiff in 2014, asking that the criminal charges against him be dismissed for denial of a speedy trial and that he be awarded money damages. (ECF No. 4).

The docket sheet from Case No. 14-F-47,[1] on file with the Cabell County Circuit

---

[1] When performing its screening duty, the court applies the same standard of review used to consider motions to dismiss under Rule 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). The court may "pierce the veil of the complaint's factual allegations [and] apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts." *Massey v. Wriston*, No. 2:13-CV-08842, 2016 WL 5172811, at *4 (S.D.W. Va. Sept. 21, 2016) (citations omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ("The court is not limited to the four corners of the complaint, however. Numerous cases ... have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment. These matters are deemed to be a part of every complaint by implication.") (footnote omitted).

Clerk's Office, demonstrates that a Cabell County grand jury indicted Plaintiff on March 7, 2014 on four counts of third degree sexual assault. *West Virginia v. Black,* Case No. 14-F-47 (Cabell Cty. Cir. Mar. 7, 2014). On April 9, 2015, R. Craig Tatterson was appointed as a Special Prosecuting Attorney after Assistant Prosecuting Attorney, Lauren Plymale, the Cabell County Prosecutor's Office, and the first appointed Special Prosecuting Attorney, Tom Plymale, were either disqualified or relieved of the duty to prosecute Plaintiff. *Id.* On November 2, 2015, Plaintiff entered into a plea agreement with the State of West Virginia in which he agreed to plead guilty to one felony count of third degree sexual assault in exchange for dismissal of the other three counts. *Id.* That same day, Plaintiff pled guilty to the charge and was convicted. *Id.* Plaintiff was sentenced to a term of imprisonment. On November 20, 2015, he was discharged from custody to begin a 30-year term of supervised release. (*Id.*).

On August 2, 2016, a petition to revoke supervised release was filed. *West Virginia v. Black, supra.* Plaintiff was committed to the custody of the West Virginia Division of Corrections and Rehabilitation ("DCR") on August 18, 2016 to serve a five-year term of imprisonment. (*Id.*). He was discharged from custody on January 26, 2019. However, Plaintiff was ordered to appear in court on June 4, 2019 for a hearing on a petition to revoke supervised release. (*Id.*). Plaintiff was again committed to the DCR's custody on June 19, 2019, and an order revoking his supervised release was entered on July 10, 2019. According to the DCR's prisoner locator, Plaintiff is currently incarcerated at the St. Mary's Correctional Center with a projected release date of May 10, 2024. *See* http://apps.wv.gov/OIS/OffenderSearch/DOC.

II.    **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each

case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 31-32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court of the United States ("Supreme Court") further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the court is required to accept as true the factual allegations asserted in a complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

4

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   Discussion

Plaintiff asserts claims against four defendants. The undersigned **FINDS** that all four of the defendants are immune from suit and must be summarily dismissed from this action.

### A.  The State of West Virginia

The State of West Virginia is entitled to dismissal based on the principle of sovereign immunity found in the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Eleventh Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at \*2 (D.S.C. Jan. 7, 2011) (citing *Will,* 491 U.S. at 70; *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment sovereign immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express. In other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at \*3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at \*2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder v. PrimeCare Med., Inc.,* No. CIV.A. 3:13-31596, 2015 WL 1276748, at \*7 (S.D.W. Va.

Mar. 19, 2015); *Skaggs v. W. Reg'l Jail,* No. CIV.A. 3:13-3293, 2014 WL 66645, at *5

(S.D.W. Va. Jan. 8, 2014); *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL

3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*,

No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013). Therefore, the

waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity

when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of

constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363

(2001) (quoting *Kimel v. Fla. Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir. 1998), *aff'd*

528 U.S. 62 (2000)). In *Will v. Mich. Dept. of State Police*, the Supreme Court

concluded that Congress did not have the States in mind as potential defendants when

it imposed liability under § 1983. *Will,* 491 U.S. 58, 65 (1989). Noting that ordinary

rules of statutory construction required Congress to make any alteration of the "usual

constitutional balance between the States and the Federal Government ...

unmistakably clear in the language of the statute," the Supreme Court observed that

had Congress intended to include States as potential defendants under § 1983, it would

have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S.

234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and

explained that interpreting the language of § 1983 "to exclude the States accorded with

the most natural reading of the law, with its legislative history, and with the rule that

Congress must clearly state its intention to alter 'the federal balance' when it seeks to

do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus,

Congress has not abrogated Eleventh Amendment sovereign immunity in the context

of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). However, **a state officer** must be named under this exception and that officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the State of West Virginia is not a state officer, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that the lawsuit must name a state official as the defendant, not a state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive

relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction.").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the State of West Virginia is shielded from liability on Plaintiff's complaint by the Eleventh Amendment's sovereign immunity.

In addition to its sovereign immunity, the State of West Virginia is entitled to dismissal, because it is not a person subject to suit in this Court. Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50-52 (1999) (emphasis added).

As previously stated, in *Will,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... § 1983." 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. Accordingly, the undersigned further **FINDS** that the State of West Virginia is not a

"person" subject to liability under § 1983 and, therefore, must be dismissed from this action.

## B. Judge Farrell and Judge Howard

It is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted). As stated, "[j]udicial immunity is an absolute immunity: it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely." *Lemon v. Hong*, No. CV ELH-16-979, 2016 WL 3087451, at *4 (D. Md. June 2, 2016) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985).

There are only two conditions in which judicial immunity does not apply to bar a § 1983 claim for money damages: (1) if the judge acted in the "clear absence of all jurisdiction" or (2) the judge's action was not a "judicial act." *King*, 973 F.2d at 356-57. Under the first condition, "[a] distinction is drawn between acts that are performed in

'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with the former type of act accorded immunity." *Id.* Therefore, the question is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him, and, in answering that question, the scope of the judge's jurisdiction must be construed broadly." *Id.* at 357 (internal quotations and markings omitted).

As to the second condition, in determining whether the act at issue was a "judicial act," the Court examines "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." *Id.* Notably, "the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her exercise of authority is flawed by the commission of grave procedural errors." *Id.* Such "errors do not render the act any less judicial, nor permit a determination that the court acted in the absence of all jurisdiction." *Id.*

In regard to equitable claims for relief, the question of whether judicial immunity shields a judicial defendant depends on the type of relief sought. Previously, in *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." However, this decision was later abrogated by statute. In 1996, "Congress passed the Federal Courts Improvement Act, amending Section 1983 with the intent to overrule *Pulliam*." *Allen v. DeBello*, No. 16-2644, 2017 WL 2766365, at *4 (3d Cir. Jun. 27, 2017); *Donato Malave v. Abrams*, 547 Fed. Appx. 346, 347 (4th Cir. 2013). As amended, § 1983 now states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief

11

shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Therefore, the statute clearly limits the circumstances in which prospective injunctive relief may be sought to those instances in which the judicial officer has violated a declaratory judgment, or declaratory relief is unavailable. *See Ray v. Judicial Corr. Servs., Inc.*, No. 2:12-cv-02819-RDP, 2014 WL 5090723, at *3 (N.D. Ala. Oct. 9, 2014) ("Judicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity. Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end-run around judicial immunity."). Moreover, a complaint seeking a declaration of past wrongdoing by a judge, in contrast to one seeking to halt a present or ongoing violation of federal law, is not a claim for prospective injunctive relief, but rather is retrospective in nature; such a complaint is barred by absolute judicial immunity. *See, e.g., Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013) (citing *Green v. Mansour,* 474 U.S. 64, 73 (1985)).

Here, Plaintiff does not include any allegations in his complaint indicating that either Judge Farrell or Judge Howard acted outside of the jurisdiction of the Circuit Court, or took an action that was not judicial. Plaintiff argues that he was wrongfully incarcerated in violation of his right to a speedy trial; a right which he concedes was intentionally waived by his attorney. (ECF No. 2 at 4-5). Plaintiff also complains that substitute counsel, who was appointed by the Court to represent Plaintiff after he requested removal of his first attorney, would not work with him to obtain a speedy trial. The actions allegedly taken by the presiding judges—appointing counsel and allowing counsel to seek a continuance of the trial date—are clearly judicial acts taken within the scope of the Circuit Court's jurisdiction. Consequently, the undersigned

**FINDS** that Judge Farrell and Judge Howard are entitled to dismissal on the basis of judicial immunity.

Furthermore, Plaintiff's demand that his conviction and sentence of supervised release be set aside must be denied, because such relief simply is not available in a § 1983 case. *Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994). In *Heck*, the Supreme Court explained that monetary damages, injunctive and declaratory relief are not available through § 1983 "if judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction." *Weeks v. Camuti*, No. CV DKC-19-1525, 2019 WL 3220148, at *2 (D. Md. July 17, 2019). Plaintiff does not suggest that either judge violated a declaratory decree, or that declaratory relief was unavailable. Instead, he seeks a retrospective ruling that the judges' past behavior was unconstitutional, so that Plaintiff's conviction and sentence can be set aside. A civil lawsuit under § 1983 is not a substitute for direct appeal or habeas review. *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). To the contrary, before Plaintiff can maintain a § 1983 case for money damages based on his conviction and sentence of supervised release, he must prove that the underlying conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486-87.

If Plaintiff's goal is to have this Court review his prior conviction and sentence, then he must first exhaust his state remedies. 28 U.S.C. § 2254(b); *see also Exxon*

13

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The *Rooker–Feldman* doctrine is a jurisdictional rule that prohibits a federal district court from hearing cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") (citation and markings omitted). In other words, a federal district court cannot short-circuit the state appellate and habeas processes and directly review a state court judgment in a criminal case. Plaintiff fails to allege that his conviction or sentence was set aside, and the record does not reflect that Plaintiff has instituted and completed any state court action challenging the validity of his conviction or sentence.

### C. Craig Tatterson

The law is equally well settled that a prosecutor is afforded absolute immunity from civil liability for actions taken as an officer of the court within the scope of his prosecutorial duties. *Van De Kamp v. Goldstein,* 555 U.S. 335, 340-41 (2009). This immunity applies to conduct in furtherance of a variety of advocacy functions; including, initiating prosecution, presenting the State's case, participating in courtroom hearings and plea negotiations, evaluating evidence and witnesses, and making professional judgments and taking actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 416 (1976). When performing his or her official functions, a prosecutor is afforded immunity even if he or she "acted with an improper state of mind or improper motive." *Schmueli v. City of New York,* 424 F.3d 231, 237 (2nd Cir. 2005). The only activities taken by a prosecutor that are not entitled to absolute prosecutorial immunity are administrative and investigatory actions that are not connected with the judicial phase of the criminal

14

process. *Van De Kamp,* 555 U.S. at 342-43.

In *Imbler v. Pachtman,* a § 1983 plaintiff asserted that a prosecutor intentionally, and at other times negligently, allowed a witness to give false testimony, and prosecuted the plaintiff knowing that he was "cleared" by a lie detector test. *Imbler,* 424 U.S. at 416. The Supreme Court affirmed the lower court's decision that the prosecutor was given absolute immunity in such circumstance. *Id.* at 431. Although acknowledging that absolute immunity might leave "the genuinely wronged defendant without civil redress," the Supreme Court concluded that policy considerations guided its decision. *Id.* at 428. The Supreme Court reasoned that, much like the concept of judicial immunity, the threat of § 1983 suits for actions taken in initiating and pursuing a criminal prosecution would undermine the performance of the prosecutor's duties in enforcing the criminal law, which would ultimately harm the citizens. *Id.* at 427-28. Moreover, the Supreme Court pointed out that extending absolute immunity to prosecutors did not foreclose *all* avenues of redress to a truly aggrieved individual. Indeed, a "prosecutor's possible knowledge of a witness' falsehoods" was a typical issue addressed in actions for post-trial relief. *Id.* at 425. As noted by the Supreme Court, various post-trial procedures are available to determine if a person received a fair trial, such as the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. *Id.* at 427. Furthermore, despite their civil immunity, prosecutors are not beyond the reach of criminal law and are subject to professional discipline by an association of their peers should they violate the law or the ethical standards of their profession. *Id.* at 429.

In this case, Plaintiff does not explicitly describe the constitutional violations allegedly committed by Defendant Tatterson. However, there is nothing in the record

to indicate that Defendant Tatterson acted in an administrate or investigatory role not protected by absolute prosecutorial immunity. He was not appointed until April 2015, well after the indictment and initial investigation were completed. After Defendant Tatterson's appointment and before the plea agreement, the docket shows a fair amount of activity in the case, but all of it is directly connected to the judicial phase of the criminal proceedings. Therefore in the absence of any claim that Defendant Tatterson violated Plaintiff's rights while Defendant Tatterson was performing non-advocacy functions, the undersigned **FINDS** that Defendant Tatterson is entitled to absolute immunity from Plaintiff's claims for damages.

## IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the presiding District Judge accept the proposed findings; **DISMISS** the complaint, (ECF No. 2),with prejudice; and **REMOVE** this matter from the docket of the Court. In light of the recommendation for dismissal, the undersigned further **RECOMMENDS** that Plaintiff's Motion for a Speedy Trial be **DENIED**. (ECF No. 5).

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the

16

presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** September 11, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge